IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DARNELL MEAN,<br><br>    **Plaintiff,**<br><br>v.<br><br>NURSING STAFF, D. PAYNE, DIANE SKORCH, LT. RANSEN, DAVID MITCHELL, B. WALLA, DR. MYERS, NURSE PRACTITIONER BOB, NURSE PRACTITIONER APRIL K., GREGORY LITTLE, and C/O SLOWERS,<br><br>    **Defendants.** | Case No. 24-cv-1542-RJD |

# MEMORANDUM AND ORDER

**DALY, Magistrate Judge:**

Plaintiff Darnell Mean, an inmate of the Illinois Department of Corrections who is currently incarcerated at Pinckneyville Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. The claims in this case were severed from *Mean v. Pinckneyville Correctional Center*, Case No. 23-cv-4011-DWD (Doc. 19). As to the claims severed into this case, Mean alleges the defendants denied his due process rights in a disciplinary hearing, retaliated against him, and denied him adequate medical care. He raises claims pursuant to the First, Eighth, and Fourteenth Amendments.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A.[1] Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## The Complaint

Mean makes the following allegations: On November 14, 2023, Mean transferred from Robinson Correctional Center to Pinckneyville Correctional Center. Prior to his transfer, Mean alleges that he was involved in a physical altercation with a lieutenant and was injured (Doc. 1, p. 4). Upon arriving at Pinckneyville, Mean saw Wexford nursing staff but his complaints regarding his injuries were ignored (*Id*.). Mean alleges that it was clear to him he would not receive any treatment because he assaulted an officer, but he was told that he could submit a sick call request (*Id*.). Mean alleges that after being placed in segregation at Pinckneyville he did not receive "vitally important" medication for several days (Doc. 2, p. 20).

On November 17, 2023, Defendant Payne delivered a disciplinary ticket to Mean's cell but refused to take the stub where Mean had identified witnesses (Doc. 1, p. 5). On

---

[1] The Court has jurisdiction to screen the Complaint in light of Plaintiff's consent to the full jurisdiction of a Magistrate Judge, and the limited consent by the Illinois Department of Corrections and Wexford Health Sources, Inc., to the exercise of Magistrate Judge jurisdiction as set forth in the Memoranda of Understanding between this Court and these two entities.

November 20, 2023, Mean participated in a disciplinary hearing, but Defendant Little made aggressive comments about Mean (*Id.*). He further refused to hear Mean's full statement, told him to give the written copy of his statement to Defendant Skorch, and insisted he plead either guilty or not guilty (*Id.*). Mean believes the hearing was biased because the officers, including Little, Skorch, and Defendant Ransen, were lieutenants like the officer with whom he had the altercation (*Id.*). He asked to have the hearing rescheduled before another committee, but his request was denied (*Id.*; Doc. 2, pp. 22-23).

After the hearing, Mean wrote a letter to Warden Mitchell about the hearing and his need for medical care, but Mitchell ignored the letter. Mitchell also declined to label Mean's subsequent grievance an emergency (Doc. 1, p. 5). Mean then filed a writ of mandamus that became the initiating document in *Mean v. Pinckneyville Correctional Center*, Case No. 23-cv-4011-DWD. At some later point, Mean tried to explain to Ransen his concerns with the written report, but Ransen believed the explanation to be "sketchy and unbelievable" (Doc. 1, p. 5).

While in segregation, Mean sought cleaning supplies to clean the mat and his floor due to his incontinence (Doc. 2, p. 25). Mean alleges that "medical" would not provide him the necessary supplies for his condition nor would any staff provide him with cleaning supplies (*Id.*). He was also not allowed out of his cell or given an opportunity to attend therapy (*Id.*).

On December 20 and 21, 2023, Defendant Slowers handcuffed Mean inside his segregation cell while Slowers removed Mean's cellmate from the cell for medical care

(Doc. 1, p. 6; Doc. 2, p. 26). Mean showed Slowers an administrative directive but the next day Slowers again handcuffed Mean in his cell (*Id.*).

On December 12, 2023, Mean submitted a request to cut his stay in segregation in order to see a medical doctor (Doc. 2, p. 26). On December 25, 2023, Adjustment Committee Investigator Walla returned the request, indicating Mean was not eligible for a reduction (*Id.*). Mean believes that Walla denied the request because he knew about Mean's pending mandamus action (Doc. 1, p. 6). But right after the holidays, Mean received a seven-day cut to his sentence (*Id.*). He also alleges Walla omitted facts in the disciplinary report (Doc. 2, p. 27).

Mean further alleges that while in segregation, Dr. Myers repeatedly ignored or cancelled his appointments (Doc. 1, p. 6). He alleges it is customary for inmates not to be seen by doctors while in segregation (*Id.*). Mean requested care for his injuries and incontinence (Doc. 2, p. 8). After being released from segregation, the call pass line was cancelled on at least three occasions. On February 16, 2024, Mean was furloughed for an orthopedic consult about his foot (Doc. 1, pp. 6-7).

At some point, Mean alleges that Defendant April K. started retaliating against him by insisting he take his medications in crushed form (*Id.* at p. 7). He complained to Nurse Practitioner Bob, but Bob also retaliated against Mean on April K.'s behalf (*Id.*). Mean alleges that he had a seizure and was placed on seizure watch, but Bob failed to properly conduct the watch in retaliation for Mean's complaints about April (*Id.*). Specifically, Mean was initially on a two-hour watch, but after he spoke to Nurse Practitioner Bob about April K.'s actions, Bob extended the watch to a 24-hour watch

4

(Doc. 2, p. 29-30). Mean was also not allowed to use his wheelchair during the seizure watch (*Id.*).

## Discussion

Based on the allegations in the pleading, the following counts were severed into this case:

> **Count 4:** Eighth Amendment deliberate indifference claim against the Wexford nursing staff for refusing to address Mean's injuries upon intake at Pinckneyville.
>
> **Count 5:** Fourteenth Amendment due process claim against Defendant Payne for refusing to take Mean's witness list when he served the disciplinary ticket on November 17, 2023.
>
> **Count 6:** Fourteenth Amendment due process claim against Defendants Little, Skorch, and Ransen for their roles in the disciplinary proceedings, including refusing to hear Mean's statements.
>
> **Count 7:** Eighth and/or Fourteenth Amendment claim against Defendant Mitchell for ignoring Mean's letter and grievance about the biased disciplinary hearing and his ongoing medical needs.
>
> **Count 8:** Eighth Amendment cruel and unusual punishment claim against Defendant Slowers for handcuffing Mean within his segregation cell on two dates in December 2023.
>
> **Count 9:** Fourteenth Amendment due process claim against Defendant Walla for refusing Mean's request to cut his segregation time in December 2023.
>
> **Count 10:** Eighth Amendment deliberate indifference claim against Defendant Dr. Myers for cancelling Mean's appointments or refusing to see him while in restrictive housing.
>
> **Count 11:** First Amendment retaliation claim against Defendants April K. and Bob for their handling of Mean's medications and his need for care.

5

      **Count 12:**    Conditions of confinement claim about Mean's stay in restrictive housing at Pinckneyville.[2]

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard**.[3]

**Count 4**

Simply put, Mean fails to state a claim against the unknown nurses in Count 4. He merely alleges that upon his arrival at Pinckneyville he was greeted by unknown nursing staff who ignored his complaints regarding his injuries (Doc. 2, p. 19). Mean fails to identify any of the staff he met with; he does not even identify the number of nurses who were present upon his arrival. Although Mean may certainly allege claims against identified John/Jane Does (*i.e.*, John Doe #1, John Doe #2), he refers only to a generic group of nurses. These claims are too generic to survive threshold review as he does not describe the nurses that he spoke to requesting care, nor state the number of them. Mean

---

[2] Although the original Order opening this case indicates that Mean experienced unconstitutional conditions of confinement at Robinson (Doc. 1, p. 9), Mean's pleading clearly refers to his conditions while in restrictive housing at Pinckneyville (Doc. 2, p. 25). Thus, Count 12 has been amended to reflect Mean's allegations.

[3] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

may identify a defendant by a John/Jane Doe designation, but he must identify them by number and description. Thus, Count 4 is **DISMISSED without prejudice**.

**Counts 5-6**

Both Counts 5 and 6 raise due process claims in regards to Mean's disciplinary hearing at Pinckneyville. In Count 5, Mean alleges that Payne violated his due process rights by refusing to accept his request for witnesses. In Count 6, Mean alleges Little, Skorch, and Ransen refused to hear Mean's testimony and were biased against him, resulting in Mean being found guilty of the charges.

Due process safeguards that are associated with prison disciplinary hearings include: (1) advance written notice of the charges; (2) the opportunity to appear before an impartial hearing body to contest the charges; (3) the opportunity to call witnesses and present documentary evidence as a defense (if prison safety allows and subject to the discretion of correctional officers); and (4) a written statement summarizing the reasons for the discipline imposed. *See Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974). In addition, the decision of the adjustment committee must be supported by "some evidence." *Scruggs v. Jordan,* 485 F.3d 934, 941 (7th Cir. 2007).

Mean alleges that he was denied the opportunity to present witnesses and his personal statement. He also alleges that the committee members were biased. Although these allegations could amount to a due process violation, an inmate's liberty interests are protected by the Due Process Clause only insofar as a deprivation of the interest at issue would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The attached

7

adjustment committee final report indicates that Mean received three months in segregation that was later shortened by seven days (Doc. 2, pp. 27, 69). A short stay in segregation, by itself, does not typically amount to an atypical and significant hardship. *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Thomas v. Ramos*, 130 F.3d 754, 761-62 (7th Cir. 1997) (two months not enough on its own); *Williams v. Brown*, 849 F. App'x 154, 157 (7th Cir. 2021) (noting that 30 days is not enough); *Beamon v. Pollard*, 711 F. App'x 794, 795 (7th Cir. 2018) (135 days in segregation, absent any atypical and significant conditions, "does not violate the Fourteenth Amendment"); *Lekas v. Briley*, 405 F.3d 602, 612 (7th Cir. 2005) (90 days in segregation did not state a claim). Here, Mean includes very little allegations about his conditions in restrictive housing. He notes that he was denied cleaning supplies to clean his mat and floor. He also alleges that he had issues with incontinence, but he fails to describe the actual state of his cell. Nor does he further allege how his incontinence, without access to cleaning supplies, amounted to an atypical and significant hardship. He also alleges that he was denied an opportunity to try therapy outside of his cell, but fails to provide any allegations suggesting if, or when, he was scheduled for physical therapy. Without more, Mean's allegations that he served less than 90 days in a cell without cleaning supplies is not enough to state a due process claim. Thus, his claims in Counts 5 and 6 are **DISMISSED without prejudice**.

**Count 7**

Similarly, his claims against Warden Mitchell for violations of his due process and Eighth Amendment rights also fail. He alleges that he sent letters to Mitchell about the unfair disciplinary hearing and his need for medical care, but he never received a

response from the warden. But there is no indication whether or not Mitchell received the letter. *See Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999) (stating that the relevant inquiry is whether defendants "actually knew about [Plaintiff's] condition, not whether a reasonable official should have known"). Nothing in the pleading suggests that Mitchell was aware of Mean's complaints regarding his disciplinary hearing and medical care. Mean further alleges that Mitchell denied emergency status for his grievance but the denial or mishandling of a grievance also does not state a claim. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) ("[T]he alleged mishandling of [a prisoner's] grievance by persons who otherwise did not cause or participate in the underlying conduct states no claim."). Thus, Count 7 is also **DISMISSED without prejudice**.

**Count 8**

As to Defendant Slowers in Count 8, Mean alleges that he handcuffed Mean in his cell on two occasions while he removed Mean's cellmate from the cell. Although Mean alleges that he believes this action was against administrative directives, he fails to indicate how Slowers's actions violated Mean's rights or amounted to cruel and unusual punishment. The simple violation of an administrative directive does not, on its own, constitute a constitutional violation. Section 1983 "protects plaintiffs from constitutional violations, not violations of state laws or … departmental regulations and … practices." *Scott v. Edinburg,* 346 F.3d 752, 760 (7th Cir. 2003); *Ashley v. Snyder*, 739 N.E.2d 897, 902 (Ill. App. Ct. 2000) (prison regulations were "never intended to confer rights on inmates or serve as a basis for constitutional claims"). Without more, Mean fails to state a claim against Slowers and Count 8 is **DISMISSED without prejudice**.

**Count 9**

Mean also fails to state a due process claim against Walla. Although he alleges that Walla refused his request for a segregation cut, there are no allegations to suggest that the denial violated Mean's due process rights. Mean fails to allege what process, if any, he was due on the request for a cut in his sentence. Further, Mean acknowledges that he ultimately received a cut to his sentence in segregation. Thus, he fails to state a claim and Count 9 is **DISMISSED without prejudice**.

**Count 10**

In Count 10, Mean alleges that Dr. Myers refused to see him while Mean was housed in restrictive housing. He alleges that his appointments were cancelled by Dr. Myers. To state a viable claim, Mean must allege facts suggesting that (1) he "suffered from an objectively serious medical condition", and (2) the defendants acted with deliberate indifference to his medical needs. *Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017). Mean alleges that he had injuries when he arrived at Pinckneyville and suffered from incontinence (Doc. 2, p. 8). Despite submitting numerous requests to be seen by Dr. Myers, the physician cancelled scheduled appointments and would not see Mean while he was in segregation (*Id.* at p. 28). At this stage, Mean has adequately alleged that Dr. Myers acted with deliberate indifference to Mean's medical needs.

**Count 11**

In Count 11, Mean alleges that Nurse Practitioner April K. began retaliating against him by requiring that he ingest his medication, even the time released medication, in crushed form. In order to adequately state a retaliation claim, a plaintiff must allege

10

that he engaged in protected activity, "suffered a deprivation likely to deter such activity," and the "First Amendment activity was at least a motivating factor in the decision to impose the deprivation." *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014) (citations omitted). Although he alleges that April K. retaliated against him, Mean fails to state that he was engaged in First Amendment activity, nor has he alleged that any protected activity was the motive for April K.'s retaliation. He merely alleges April K. required him to use crushed pills which is not enough to state a retaliation claim (Doc. 2, pp. 29, 79). Thus, any retaliation claim against April K. is **DISMISSED without prejudice**.

In addition to his retaliation claim against April K., Mean alleges that Nurse Practitioner Bob retaliated against him on behalf of Nurse April K. (Doc. 2, p. 29). Mean alleges that after heaving a seizure, Nurse Practitioner Bob placed him on a two-hour watch, but after informing him of April K's actions, the watch was changed to a 24-hour watch (*Id*. at pp. 29-30). Mean also alleges that he was initially denied access to his wheelchair after complaining about April K. (*Id*.). Mean adequately alleges that Nurse Practitioner Bob's actions were in retaliation for Mean's verbal complaints about April K. Thus, Count 11 shall proceed against Nurse Practitioner Bob only.

**Count 12**

Finally, Mean fails to state a claim in Count 12. Although Mean describes the conditions he experienced while in restrictive housing at Pinckneyville, he fails to tie any named defendant to his claim. There are simply no allegations to suggest any of the

11

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

If judgment is rendered against Mean, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Mean is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: August 9, 2024.**

> */s/ Reona J. Daly*
> REONA J. DALY
> **U.S. Magistrate Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all

the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**