IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DARNELL MEANS,                          )
                                        )
      Plaintiff,                        )
                                        )
v.                                      )          Case No. 24-cv-1542-RJD
                                        )
                                        )
PERCY MYERS, *et al.*,                  )
                                        )
      Defendants.                       )

## ORDER

**DALY, Magistrate Judge:[1]**

      This matter is now before the Court on Defendants' Motion for Summary Judgment for Plaintiff's failure to Exhaust his Administrative Remedies (Doc. 26).  For the reasons set forth below, Defendants' motion is **GRANTED**.

## Background

      Plaintiff Darnell Means[2] is a former inmate of the Illinois Department of Corrections ("IDOC") who has since been released from IDOC custody. Initially, Plaintiff presented allegations styled as a petition for a writ of mandamus filed in case number 23-cv-4011. Petition for Writ of Mandamus, Means v. Pinckneyville Corr. Ctr., No. 23-CV-4011-DWD, (S.D. Ill. Dec. 22, 2023), ECF No. 1.  Judge Dugan dismissed Plaintiff's Petition for lack of jurisdiction but invited an amended pleading.  *Means v. Pinckneyville Corr. Ctr.*, No. 23-CV-4011-DWD, 2024

---

[1] This matter has been assigned to the undersigned to conduct all proceedings, including the trial and final entry of judgment, through the parties' consent pursuant to  28 U.S.C § 636(c) and Federal Rule of Civil Procedure 73.  (Doc. 21).

[2] Plaintiff clarified at the *Pavey* hearing that his full and correct name is Darnell Means.  The Clerk of Court is DIRECTED to update the docket to reflect Plaintiff's correct and full name.

WL 328788 (S.D. Ill. Jan. 29, 2024). On February 16, 2024, Plaintiff filed his Amended Complaint in case number 23-cv-4011 pursuant to 42 U.S.C. § 1983, raising claims against, among others, "Wexford Healthcare employees, nurses, practitioner and *doctor* at Pinckneyville and Robinson [correctional centers] who ignored and cancelled appointments for injuries sustained." First Amended Complaint, Means v. Pinckneyville Corr. Ctr. at 5, No. 23-CV-4011-DWD, (S.D. Ill. Feb. 16, 2024), ECF No. 13 (emphasis added). In his First Amended Complaint, Plaintiff alleged, *inter alia*, that he "continually [sought] medical attention to be evaluated to learn why there was continuing loss of the use of the leg and having become incontinent. Wexford Health Care continued to *cancel doctor* and practitioner *appointments*." First Amended Complaint*, supra* at 11-12 (emphasis added). Attached to Plaintiff's First Amended Complaint was a grievance dated January 28, 2024 (#K59-0124-359). First Amended Complaint*, supra* at 38-40. In his January 28, 2024, grievance, Plaintiff stated, *inter alia*: "[o]n 1/10, 11 and 18, 2024 doctor appointments were cancelled for me ignoring the fact that I was injured nearly three months ago losing the use of my right leg and having beginning incontinence . . . ." First Amended Complaint*, supra* at 38-40.

On April 1, 2024, the court entered an order dismissing Plaintiff's First Amended Complaint for failure to state a claim. *Means v. Pinckneyville Corr. Ctr.*, No. 23-CV-4011-DWD, (S.D. Ill. Apr. 1, 2024), ECF No. 14. The court observed that Plaintiff's January 28, 2024, grievance was returned to him, and Plaintiff signed the line to appeal to the Administrative Review Board on February 13, 2024, just three days before he filed the First Amended Complaint. *Id.* at 6-7, n.2. The court concluded that it was obvious from the face of the pleading that Plaintiff had not exhausted. *Id.* The court dismissed without prejudice the First Amended Complaint. *Id.* at 8.

On May 7, 2024, Plaintiff filed his Second Amended Complaint in case number 23-cv-4011. Second Amended Complaint, Means v. Pinckneyville Corr. Ctr. at 5, No. 23-CV-4011-DWD, (S.D. Ill. May 7, 2024), ECF No. 16. Plaintiff's Second Amended Complaint named 29 defendants employed at two facilities – Robinson Correctional Center ("Robinson") and Pinckneyville Correctional Center ("Pinckneyville"). Second Amended Complaint, *supra*. On June 19, 2024, the court entered an order severing this matter into two separate cases – one for the events at Robinson and one for the events at Pinckneyville. *Means v. Pinckneyville Corr. Ctr.*, No. 23-CV-4011-DWD, (S.D. Ill. Jun. 19, 2024), ECF No. 19.

Pursuant to Judge Dugan's severance order, on June 21, 2024, the Clerk opened this case regarding the events at Pinckneyville. (Docs. 1 & 2). In the operative complaint in this case (previously Second Amended Complaint in case number 23-cv-4011 and hereinafter the "Complaint"), Plaintiff alleged deprivation of his constitutional rights pursuant to 42 U.S.C. § 1983. (Docs. 2 & 19). Plaintiff alleged that Defendants denied his due process rights in a disciplinary hearing, retaliated against him, and denied him adequate medical care while incarcerated at Pinckneyville. (*Id.*).

Based on the allegations in the Complaint, Plaintiff asserts that on November 14, 2023, he was transferred from Robinson to Pinckneyville. (Doc. 13 at 2; Doc. 2, p. 19). Prior to his transfer, Plaintiff had been involved in a physical altercation with a lieutenant and was injured. (Doc. 13 at 2; Doc. 2 at 15-17). Upon arriving at Pinckneyville, he saw Wexford nursing staff, but his complaints regarding his injuries were ignored. (Doc. 2 at 19). Plaintiff was placed in segregation at Pinckneyville from November 14, 2023, to January 4, 2024. (Doc. 2 at 19, 28). He averred that it was clear to him he would not receive any treatment because he had assaulted an officer, but he

was told that he could submit a sick call request. (*Id.* at 20). After being placed in segregation at Pinckneyville, he did not receive "vitally important" medication. (*Id.*). His medical requests while [in] segregation were ignored on "11/20, 11/21, 11/22, 11/23, 12/4, 12/6, 12/7, 12/7, 12/9, 12/12, . . . ,12/18, & 12/31 all because it's customary not to be seen by doctors while in [segregation]." (Doc. 2 at 28-29). Plaintiff "continued requesting medical attention upon release from Segregation," but "[a]ppointments were cancelled by Defendant Dr. Myers . . . on 1-10-24, 1-11-24, 1-16-24." (Doc. 2 at 28-29).

Plaintiff further alleged that, at some point, nurse April K. started retaliating against him by insisting he take his medications in crushed form. (Doc. 2 at 29-30). Plaintiff complained to Nurse Practitioner Bobbly Blum, but Blum also retaliated against him on April K.'s behalf. (*Id.*). Plaintiff had a seizure and was placed on seizure watch, but Blum failed to properly conduct the watch in retaliation for his complaints about April K. (*Id.* at 30). Specifically, Plaintiff was initially on a two-hour watch, but after he spoke to Blum about April K.'s actions, Blum extended the watch to a 24-hour watch. (*Id.*). He also alleges that he was not allowed to use his wheelchair during the seizure watch. (*Id.*).

Upon threshold review of the Complaint, Plaintiff was allowed to proceed on the following claims:

| Count 10: | Eighth Amendment deliberate indifference claim against Defendant Dr. Myers for cancelling Means' appointments or refusing to see him while in restrictive housing. |
|---|---|
| Count 11: | First Amendment retaliation claim against Defendant Blum for his handling of Means' medications and his need for care.[3] |

(Doc. 13, p. 12).

---

[3] Defendant Blum was originally identified in the Complaint as Nurse Practitioner Bob. (Doc. 25).

On January 7, 2025, Defendants Myers and Blum filed their Motion for Summary Judgment for Plaintiff's failure to Exhaust his Administrative Remedies (Doc. 26) and the accompanying memorandum in support thereof (Doc. 27). Defendants also filed and served a Notice Regarding Motion for Summary Judgment in compliance with Rule 56(b). (Doc. 28). The crux of Defendants' argument is that while Plaintiff filed grievances that were relevant to the Complaint and fully exhausted those grievances by appealing at all three levels of review, he did not comply with the Prison Litigation Reform Act ("PLRA") exhaustion requirement because he initiated this action before the ARB issued a determination on Plaintiff's relevant grievances.

Defendants attached to their Memorandum in support of their motion (Doc. 27) the record that ARB maintains regarding Plaintiff. (Doc. 27-1). While the record contains several grievances, only four of them relate to the allegations of the Complaint. Regarding his deliberate indifference claim against Dr. Myers for cancelling Plaintiff's appointments and refusing to see him while in restrictive housing, the ARB contains two relevant grievances: Grievance #4292-12-23, dated December 11, 2023, and Grievance #K59-0124-359, dated January 28, 2024.

In Grievance #4292-12-23, Plaintiff claimed that since arriving at Pinckneyville, staff and nursing had shown medical indifference to all his requests. (Doc. 27-1 at 95-96). Plaintiff described specific encounters with nurses on November 21, 2023, November 22, 2023, and December 4, 2023. (*Id.*). He stated that "[o]n 12/4 [he] submitted a request to see a doctor because [he] had completely lost feeling and the use of [his] right leg and complained of incontinence." (*Id.* at 96). Thereafter, he was seen by a Physician Assistant on December 8, 2023, who ordered physical therapy as well as medical supplies, which Plaintiff never received. (*Id.*). Plaintiff asked to be "seen by a doctor and other medical specialist to get the proper medical diagnosis, physical

therapy [and] exercise so [he] can walk again" and to also be provided with the medical supplies, including glasses.  (*Id.*).  On January 3, 2024, the Grievance Officer recommended that Grievance #4292-12-23 be denied, to which the Chief Administrative Officer ("CAO") concurred on January 4, 2023.  (*Id.* at 94).  On January 30, 2024, the ARB denied Grievance #4292-12-23.  (*Id.* at 93).  The ARB noted that Plaintiff had call passes to see a Physician Assistant on November 28, 2023, a doctor on January 10, 2024, January 11, 2024, and January 16, 2024, and a nurse practitioner on January 29, 2024.  (*Id.*).  Defendants allege that this grievance was insufficient to satisfy the PLRA exhaustion requirement because it did not identify Dr. Myers or describe conduct attributable to him, including any allegations regarding Dr. Myers cancelling Plaintiff's appointments or refusing to see him.

The record further contains Grievance #K59-0124-359, dated January 28, 2024.  (Doc. 27-1, pp. 58-59).  Therein, Plaintiff claims that on January 10, 2024, January 11, 2024, and January 18, 2024, doctor appointments were cancelled, ignoring that he was losing the use of his right leg and becoming incontinent.  (*Id.*).  On February 7, 2024, the Grievance Officer recommended that Plaintiff's January 28, 2024, grievance be denied, and on February 8, 2024, the CAO concurred. (*Id.* at 57).  On March 13, 2024, the ARB denied Grievance #K59-0124-359.  (*Id.* at 56).  As to this grievance, Defendants argue that it did not exhaust Plaintiff's administrative remedies as to his claim against Dr. Myers because the ARB did not reach a decision on its appeal until after February 16, 2024, when  Plaintiff filed his First Amended Complaint in case 23-cv-4011, containing an identical claim against Wexford Health Care.

Regarding Plaintiff's retaliation claim against Defendant Blum, the record contains two grievances:  Grievance #K59-0324-89, dated March 8, 2024, and Grievance #K59-0324-930, dated

March 13, 2024.  (Doc. 27-1l, pp. 23-24, 27-28).  In Grievance #K59-0324-890, Plaintiff claimed that after having multiple seizures, he was taken to the health care unit for a two-hour observation by Nurse Practitioner Bobby Blum.  (*Id.* at 23-24).  He claimed that Blum shouted at him for not taking medication from Nurse April and retaliated against him by placing him on a 23-hour hold to stay in the health care unit.  (*Id.*).  On April 1, 2024, the Grievance Officer recommended that Plaintiff's March 8, 2024, grievance be denied, and on April 1, 2024, the CAO concurred.  (*Id.* at 22).  On May 15, 2024, the ARB denied Grievance #K59-0324-890.  (*Id.* at 21).  Defendants argue that this grievance is insufficient to exhaust Plaintiff's claim against Blum because it was not reviewed by the ARB until after May 7, 2024, when Plaintiff raised this claim for the first time in his Second Amended Complaint.

Plaintiff also filed Grievance #K59-0324-930, dated March 13, 2024.  (Doc. 27-1, p. 27-28).  Therein, he claimed that on March 5, 2024, Nurse Practitioner Bobby Blum called him to medical to speak with him about taking medication from Nurse April K. (*Id.*).  He claimed that when he asked about other health concerns, Blum stated he did not have that information and told him to leave.  (*Id.*).  On April 2, 2024, the Grievance Officer recommended that Grievance #K59-0324-930 be denied, to which the CAO concurred on April 2, 2024.  (*Id.* at 26).  Defendants argue that on May 8, 2024, the ARB denied Grievance #K59-0324-930.  (*Id.* at 25).  As with the prior grievance, Defendants argue that Grievance #K59-0324-930 did not satisfy the PLRA exhaustion requirement because the ARB did not reach a determination on its appeal until after May 7, 2024, when Plaintiff first raised this claim in his Second Amended Complaint.

Plaintiff did not file a response to Defendants' Motion.

### *Pavey Hearing*

An evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008) was held on June 10, 2025.  (Doc. 30).  Plaintiff appeared and testified at the hearing.  He confirmed that he was aware of the IDOC grievance process, including that the administrative remedies are not deemed exhausted until after the ARB issues a determination on an inmate's grievance appeal.  He stated that he believed he had fully exhausted all of his grievances prior to initiating his action, even though he did not have copies of the grievances, and he did not recall the exact dates that he received the ARB responses to any of them.  Plaintiff further suggested that even if the ARB had not issued a response to any of his grievances when he filed his First and Second Amended Complaints in case 23-cv-4011, he had received all ARB responses by the time this case was opened.

Defendants called as a witness the Administrative Review Board ("ARB") Chairperson, Paige Long.  Long explained that the IDOC provides for three levels of review of an inmate's grievance, with the ultimate one being an appeal to the ARB.  Long further testified that the ARB maintains the IGRV system, which reflects all records inmates submit to the ARB.  She offered testimony supporting the admissibility of Plaintiff's ARB record as attached to Defendants' memorandum.  Based on her review of the relevant record,  Long confirmed the accuracy of the dates the ARB responded to Plaintiff's relevant grievances as reflected on Plaintiff's ARB record.

### <u>Analysis</u>

### *Summary Judgment Standard*

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In considering a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). While courts generally may not resolve factual disputes on a motion for summary judgment, when the motion pertains to a prisoner's exhaustion of administrative remedies, "the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust." *Pavey*, 544 F.3d at 742; *Roberts v. Neal, 745 F. 3d 232,* 236 (7th Cir. 2014).

### *Exhaustion Requirement*

Pursuant to 42 U.S.C. § 1997e(a), prisoners are required to exhaust available administrative remedies prior to filing lawsuits in federal court. "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on

the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999).

An inmate in the custody of the Illinois Department of Corrections must first submit a written grievance within 60 days after the discovery of the incident, occurrence, or problem to his or her institutional counselor unless certain discrete issues are being grieved. 20 ILL. ADMIN. CODE § 504.810(a). If the complaint is not resolved through a counselor, the grievance is considered by a Grievance Officer who must render a written recommendation to the Chief Administrative Officer ("CAO") — usually the Warden — within two months of receipt, "when reasonably feasible under the circumstances." *Id.* §504.830(e). The CAO then advises the inmate of a decision on the grievance. *Id.*

An inmate may appeal the CAO's decision in writing within 30 days to the Administrative Review Board ("ARB") for a final decision. *Id.* § 504.850(a); *see also Dole v. Chandler*, 438 F.3d 804, 806–07 (7th Cir. 2006). The ARB will submit a written report of its findings and recommendations to the Director, who shall review the same and make a final determination within six months of receipt of the appeal. 20 ILL. ADMIN. CODE § 504.850(d) and (e).

An inmate may request that a grievance be handled as an emergency by forwarding it directly to the Chief Administrative Officer. *Id.* § 504.840. If it is determined that there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance is handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender. *Id.* Processing of an appeal to an emergency grievance shall also be expedited by the ARB. *Id.* § 504.850. Inmates may further submit certain types of grievances directly to the ARB, including grievances related to protective custody, psychotropic

medication, and certain issues relating to facilities other than the inmate's currently assigned facility.  *Id.* § 504.870.

The Court will address exhaustion of administrative remedies as to each one of the pending claims in order.

> Count 10:    Eighth Amendment deliberate indifference claim against Defendant Dr. Myers for cancelling Means' appointments or refusing to see him while in restrictive housing

As set forth above, Plaintiff filed only two grievances relevant to his deliberate indifference claim against Dr. Myers for the alleged cancellation of Plaintiff's appointments and refusal to see him.  Regarding Grievance #4292-12-23, the Court agrees with the Defendants that it did not satisfy the PLRA exhaustion requirement because it did not identify Dr. Myers and it did not contain any allegations sufficient to provide the facility the opportunity to address Plaintiff's claim.

Pursuant to the Illinois Administrative Code, a grievance must contain factual details regarding each aspect of the inmate's complaint, including the name of each person who is the subject of or who is otherwise involved in the complaint.  20 ILL. ADMIN. CODE § 504.810(c). Offenders who are unaware of the names of the individuals involved may still submit a grievance, but must include as much descriptive information about the individual as possible.  *Id.*  The Seventh Circuit has interpreted this provision as requiring the inmate to identify names only to the extent practicable to serve a grievance's function of giving "prison officials a fair opportunity to address [an inmate's] complaints."  *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir.2011); *Glick v. Walker*, 385 F. App'x 579, 582 (7th Cir. 2010).  Thus, not naming the defendants in a grievance is "'a mere technical defect' where the inmate sufficiently describes the alleged wrongdoing to allow prison officials a fair opportunity to respond."  *Saffold v. Illinois Dep't of Corr.*, No. 18 C

3301, 2021 WL 4477930, at *7 (N.D. Ill. Sept. 30, 2021) (*quoting Maddox*, 655 F.3d at 722).  So long as the "prison officials have been afforded an opportunity to address an inmate's claims internally prior to federal litigation, the purpose of exhaustion has been met, and the prisoner has properly exhausted his available remedies."  *Bandala-Martinez v. Bebout*, 188 F. Supp. 3d 836, 842–43 (S.D. Ill. 2016) (citing *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir.2006)).

Here, Grievance #4292-12-23 did not contain information sufficient to provide the facility the opportunity to address Plaintiff's deliberate indifference claims against Myers for his alleged cancellation of Plaintiff's appointments and refusal to see Plaintiff.  First, the grievance was filed on December 11, 2023, while the Plaintiff was still placed in segregation at Pinckneyville. Accordingly, it could not possibly contain any allegations regarding Dr. Myers's cancellation of Plaintiff's medical appointment on "1-10-24, 1-11-24, 1-16-24," after Plaintiff's release from segregation, as alleged in the Complaint.  As to the time that Plaintiff was still in segregation, Grievance #4292-12-23 contains allegations of inadequate medical treatment, but does not name Dr. Myers or otherwise describe him.  The only identified individuals are nurse personnel and an assistant physician.  There is no indication in the grievance that Dr. Myers was aware of Plaintiff's alleged inadequate medical treatment and that he refused to see Plaintiff or cancelled any scheduled appointments with him as alleged in the Complaint.  Plaintiff argued at the hearing that Dr. Myers' involvement in his Grievance #4292-12-23 should be inferred because he was the ultimate decision maker of the Pinckneyville health department.  However, there is no supervisory liability under the PLRA, and in any case, Plaintiff's claim under Count 10 is that Dr. Myers refused to see him and cancelled his appointments.  There is nothing contained in Grievance #4292-12-23 to provide the facility the opportunity to address Plaintiff's deliberate indifference claims against Myers.

Accordingly, the Court finds that Grievance #4292-12-23 did not satisfy the PLRA exhaustion requirement as to Plaintiff's claim against Dr. Myers.

Turning to Grievance #K59-0124-359, dated January 28, 2024, there is no question that it contains sufficient information to inform the facility of Plaintiff's deliberate indifference claim against Dr. Myers.  However, as Defendants point out, the ARB did not reach its decision on Plaintiff's appeal on that grievance until March 13, 2024.  (Doc. 27-1 at 56).  Therefore, the Court must determine whether the ARB reached its decision before Plaintiff first brought his deliberate indifference claim for the cancellation of his appointments with Dr. Myers.

The Seventh Circuit requires strict compliance with a prison's grievance procedures under the PLRA, and it does not accept a "sue first, exhaust later" approach.  *Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020) (internal quotation marks and citation omitted); *Dole*, 438 F.3d at 806–07.  "[T]he district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez*, 182 F.3d at 535.  Further, this District Court has clarified that for severed cases, the "operative date" for determining when a claim is brought is "when the complaint is tendered to the district clerk." *Gakuba v. Henderson*, No. 19-CV-01273-SPM, 2021 WL 3140727, at *4 (S.D. Ill. July 26, 2021) (*quoting Ford v. Johnson*, 362 F.3d 395, 399 (7th Cir. 2004)).  In *Gakuba*, the court explained that allowing an inmate to satisfy the PLRA exhaustion requirement "based on the Court's severance of a case would be against Seventh Circuit precedent and likely would further encourage inmates to bring multiple unrelated claims against multiple defendants." *Id. (citing Gakuba v. Pannier*, No. 19-cv-1275-NJR, 2021 WL 1165114, at *3 (S.D. Ill. Mar. 26, 2021)).  Accordingly, the Court rejects Plaintiff's argument that he complied with the PLRA exhaustion requirement because the ARB

had issued a decision on his grievance appeal prior to the opening of this case pursuant to Judge Dugan's severance order.

However, the Court's inquiry does not end there. The Court still needs to determine when Plaintiff first brought his deliberate indifference claim for Dr. Myers' cancellation of Plaintiff's appointments and refusal to see him. Dr. Myers was first identified by name as a Defendant on May 7, 2024, when Plaintiff filed his Second Amended Complaint in case number 23-cv-4011. Second Amended Complaint, *supra*. As Defendants point out, however, Plaintiff's claim against Dr. Myers was not new. Plaintiff's first Amended Complaint identified as Defendants "Wexford Healthcare, employees, nurses, practitioner and *doctor at Pinckneyville* … who cancelled appointments for injuries sustained." First Amended Complaint, *supra* at 5 (emphasis added). In the First Amended Complaint, Plaintiff further stated that he "continually [sought] medical attention to be evaluated to learn why there was continuing loss of the use of the leg and having become incontinent," but "Wexford Health Care continued to cancel doctor and practitioner appointments." First Amended Complaint, *supra* at 11-12. These are substantially the same allegations that Plaintiff raised in the Second Amended Complaint, albeit that in the latter, he identified Defendant Myers as the *"doctor at Pinckneyville"* who cancelled his appointments. (Doc. 2 at 8, 28-29).

The Court finds this case identical to the Seventh Circuit's decision in *Chambers*. There, Chambers brought his original complaint under Section 1983 against "Unknown Physician #1" for failing to treat his herpes outbreak. *Chambers*, 956 F.3d at 984. The original complaint was dismissed for failure to exhaust. *Id.* Thereafter, Chambers exhausted his administrative remedies and filed an amended complaint that identified Dr. Sood as the unknown physician who failed to

treat his herpes outbreak. *Id.* at 982-83. The district court dismissed that claim, finding that the amended claim was not new and that Chambers had failed to exhaust his available administrative remedies before he filed the original complaint. *Id.* at 983. The Seventh Circuit affirmed. *Id.*

This Court is bound by the Seventh Circuit's precedent in *Chambers*. Notably, in dismissing Plaintiff's claim for the cancellation of the appointments in the First Amended Complaint, Judge Dugan observed that Grievance #K59-0124-359 had not been fully exhausted prior to the filing of the First Amended Complaint because Plaintiff had signed the line to appeal to the ARB only three days before he filed his amended pleading. *Means v. Pinckneyville Corr. Ctr.*, No. 23-CV-4011-DWD, (S.D. Ill. Apr. 1, 2024), ECF No. 14, pp. 6-7, n.2. Accordingly, the Court finds that Grievance #K59-0124-359, dated January 28, 2024, was not fully exhausted by the time Plaintiff initiated his deliberate indifference action for Dr. Myers' cancellation of Plaintiff's appointments.

Because neither of the two grievances that are relevant to Plaintiff's deliberate indifference claim against Dr. Myers satisfied the PLRA exhaustion requirement, the claim must be dismissed without prejudice.

> Count 11:     First Amendment retaliation claim against Defendant Blum for his handling of Means' medications and his need for care.

The Court next turns to Plaintiff's First Amendment retaliation claim against Defendant Blum. There are only two relevant grievances at issue: Grievance #K59-0324-89, dated March 8, 2024, and Grievance #K59-0324-930, dated March 13, 2024. Defendants do not dispute that both grievances contain sufficient information to alert the facility of Plaintiff's claims against Blum. They argue, however, that neither grievance was fully exhausted prior to Plaintiff initiating his action. Because administrative remedies are not deemed exhausted until the ARB has reached a

decision on the grievance appeal, Grievances #K59-0324-89 and K59-0324-930 did not become fully exhausted until May 15, 2024, and May 8, 2024, respectively.  Plaintiff's retaliation claim against Defendant Blum appears in Plaintiff's Second Amended Complaint (which is the operative Complaint in this case), which was filed on May 7, 2024.  Because neither grievance at issue was fully exhausted prior to the filing of the Complaint, Plaintiff did not satisfy his PLRA exhaustion requirement as to his retaliation claim against Defendant Blum.  Therefore, Plaintiff's First Amendment retaliation claim against Defendant Blum for his handling of Means' medications and his need for care must be dismissed without prejudice for failure to exhaust the administrative remedies.

The Court clarifies that the dismissal is without prejudice, and Plaintiff may file a new suit and pay a new filing fee after he has fully exhausted administrative remedies.  *See Gakuba v. Pannier*, No. 21-1961, 2022 WL 1768843, at *2 (7th Cir. June 1, 2022); *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) ("if the prisoner does exhaust, but files suit early, then dismissal of the premature action may be followed by a new suit that unquestionably post-dates the administrative decision").

<u>**Conclusion**</u>

For the reasons set forth above, Defendants' Motion for Summary Judgment for Plaintiff's failure to Exhaust his Administrative Remedies (Doc. 26) is **GRANTED**.  This case is **DISMISSED without prejudice,** and the Clerk of Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: June 12, 2025**

_s/  Reona J. Daly_

**Hon. Reona J. Daly**
**United States Magistrate Judge**